IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


David M. Ault,                              :
               Plaintiff               :        Civil Action 2:13-cv-00505

     v.                                  :        Judge Graham

Carolyn W. Colvin,                          :        Magistrate Judge Abel
Acting Commissioner of Social Security,
              Defendant               :

### REPORT AND RECOMMENDATION

Plaintiff David M. Ault brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits and Supplemental Security Income.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** In November 1999, plaintiff was injured at work. Plaintiff filed for disability based on limitations from sciatica, radiculopathy in his left leg and depression. His impairments impacted his abilities to lift, sit walk, stand, remember and tolerate stress.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to follow the mandatory procedures for weighing opinion evidence; and,

- The decision of the administrative law judge was not supported by substantial evidence because the physical portion of the residual functional capacity determination was not based on a function by function analysis.

**Procedural History.**  Plaintiff David M. Ault filed his application for disability insurance benefits on September 29, 2009, alleging that he became disabled on March 1, 2005, at age 42, by sciatica, radiculopathy of left leg, and depression.  (R. 193, 241.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On August 9, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 37.)  A vocational expert also testified.  On September 16, 2011, the administrative law judge issued a decision finding that Ault was not disabled within the meaning of the Act.  (R. 29.)  On April 9, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  David M. Ault was born December 4, 1962. (R. 193.) He has a high school education.  (R. 277.)  He has worked as a driver, a caretaker at an adult care facility, an operator associate, and a security officer.  (R. 229.) He last worked March 1, 2005.  (R. 268.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Ault's testimony as follows:

> At the hearing, the claimant reported the use of a cane for stability, stating he utilized it off and on every day for the last year. He reported the cane was  a suggestion not a prescription by his treating

2

source Mark Hodges, M.D. The claimant also testified he would be unable to walk greater than 30 minutes; stand longer than 15 minutes or 30 minutes with a cane; and sit for 30 minutes. He stated that he would be unable to lift greater than 15 pounds at a given time and five pounds repetitively. The claimant also testified to depressive symptoms, including multiple crying spells, memory problems, and some difficulties getting along with others. He further reported an inability to stoop, bend, twist, or lift. The claimant previously had reported limitations with lifting no more than 10 pounds. He also alleged limitations with shortened attention span, numbness in his legs, irritability, lack of energy, feelings of worthlessness, and lack of motivation (Exhibit 8E/2). He previously indicated an inability to walk more than five minutes (Exhibit 12E). In a prior claim, the claimant had also reported problems dressing and difficulties bathing (Exhibit 6E).

(R. 24.) Plaintiff also testified that in November 1999, he was injured while working at Technicolor. He was lifting round film canisters that weighed approximately 35 pounds each. As he was lifting, his left shoulder popped and hip and back rotated while his leg remained stationary. He was initially diagnosed with a muscle strain, but MRIs revealed more significant damage to his hip than originally believed. Plaintiff believed that if he did not use his cane, he would fall because of numbness in his hip.

Ault testified that he had pain in his back that radiated into his hip and down his leg to his foot. He also experienced pain in his left shoulder, although this pain was not as serious as his back pain. His back pain was constant, and he rated it as a 6 or 6 ½ at best increasing to an 8 or 8 ½ on a ten-point scale. His pain was exacerbated if he leaned over in a certain way or if he had to cough. He performed back exercises daily that he learned from physical therapy.

Ault also testified that he had crying spells three to four times a day. He had difficulty getting along with people. He was also diagnosed with post-traumatic stress disorder stemming from witnessing his father's suicide at the age of 11.

Ault testified that he had been using Duragesic patches for pain, but one of the patches leaked and almost killed him. As a result, he does not take any pain medication. He tried Vicodin once but it made him sick. He believed that the post-traumatic stress disorder caused him to have seizures. He also associated the overdose caused by the Duragesic patch with the onset of the seizures and post-traumatic stress disorder. He had also recently lost his home.

Ault testified that he had difficulty with his short-term memory. He had a history of alcohol and marijuana abuse.

Ault testified that he drove his wife to work in the mornings. He could perform self-care tasks slowly, but independently. He went to his mother's house to play cards or watch television during the day several times a week. He could cook breakfast. His wife couldn't drive, so he did all the driving. He and his wife performed the grocery shopping together.

Ault was prescribed Neurontin for seizures and nerve damage. He took Lexapro for depression. He also took a muscle relaxant and blood pressure medication. He described his seizures as similar to a panic attack. (R. 56-83.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will, nonetheless summarize that evidence in some detail.

**Physical Impairments.**

A June 2, 2004 MRI of plaintiff's lumbar spine revealed no signs of compressive discopathy. He had L5-S1 facet arthropathy and hypertrophy and cholecystolithiasis. (R. 653.)

Wayne Albain, D.C. On November 15, 2004, plaintiff complained of severe left lumbar pain and severe right lumbar pain. On physical examination, plaintiff had moderately severe muscle hypertonicity at the lumbar region on palpation. Plaintiff had a severe measure of pain and discomfort and moderately severe stiffness in the lumbar region. X-rays revealed a roatory malposition of the lumbar area with unleveling on the left. Ault received treatment three times per week for two months with little improvement. (R. 366-72.)

A February 2005 EMG revealed mild but significant evidence of left S1 spinal nerve root injury. (R. 390.)

Mark Hodges, M.D. Dr. Hodges treated plaintiff from July 12, 2006 through at least March 2010. (R. 549 and 1010.)

On January 16, 2007, Dr. Hodges  reported that Ault had back pain in the lumbar area with a decreased range of motion, with flexion limited to 30°. There was some weakness and gait instability. There was no atrophy or radiculopathy. Ault's gait was

5

normal, but slow. He walked with a cane, which Dr. Hodges said was medically necessary. Ault had more pain than Dr. Hodges would customarily see given the findings on examination. (R. 550.)

Dr. Hodges' office notes for May 31, 2007 state that Ault had two epidural injections with "much relief." However, that relief had diminished, and he now rated his pain as 8-9/10. (R. 894.)

On February 25, 2008, Ault told Dr. Hodges that he had increased low back pain with pain radiating into his left leg. There was decreased range of motion. Ault said he could not get out of bed. Dr. Hodges ordered an MRI of the lumbosacral spine. (R. 893.)

A March 10, 2008 MRI of plaintiff's lumbar spine revealed L4-5 shallow bulging disc mildly narrowing the inferior portion of the neural foramina bilaterally and minimally effacing the thecal sac. There was L5-S1 shallow disc displacement and facet arthropathy with mild narrowing of the inferior portion of the left foramen.(R. 901.)

On March 28, 2008, Ault  reported being off pain medication for five weeks because he did not tolerate Duragesic patches. He still had some back pain.

On June 30, 2008, Dr. Hodges' office notes indicate a specialist recommend physical therapy and that Ault try traction. Surgery was not an option. (R. 891.) Plaintiff attempted physical therapy and made little improvement. He was prescribed a TENS unit. (R. 736.) Despite some improvement, plaintiff reported that he fell occasionally. (R. 748.)

On February 20, 2009, Ault still had some back pain. He was getting good relief with Neurontin and Meloxicam. He did not want pain medication for his back. (R. 890.) On May 20, 2009, Ault told Dr. Hodges that he was having decreasing problems with his medications and that he felt good. (R. 889.) On July 24, 2009, Ault told Dr. Hodges that he passed out the day before, falling and hitting his head on the floor. He convulsed for a short time. The diagnosis was syncope. (R. 890.)

On September 24, 2009, Dr. Hodges saw Ault for the flu. Ault was told that he had PTSD and that he should take Neurontin. (R. 887.) That same day, Dr. Hodges completed a form indicating that plaintiff was unable to work due to his depression, anxiety, PTSD and back pain. (R. 886.) He further stated, however, that Ault's symptoms appeared to be controlled with current medications. *Id.*

On January 18, 2010, Dr. Hodges notes indicate Ault was "off meds". He had "severe back pain – 8/10 pain" that radiated into his left leg. He  reported falling down at times. (R. 950.) On March 16, 2010, the diagnoses were depression, high blood sugar, and back pain. Dr. Hodges restarted Ault on Lexapro. He did not show for an April 16, 2010 appointment. (R. 948.)

On May 10, 2010, Dr. Hodges answered a questionnaire from the Social Security Administration. (R. 945.) The diagnoses were severe depression, anxiety, PTSD, and back problems. (R. 946.) Although Dr. Hodges said that Ault was "unable to work due to depression, anxiety, PTSD and back pain, he also reported that Ault's "symptoms seem to be controlled with current meds." (R. 947.)

7

James J. Sardo, M.D. On January 17, 2007, Dr. Sardo performed a consultation evaluation based on the referral of Dr. Hodges. Plaintiff described a constant aching, shooting, sharp, tender, penetrating and nagging pain in his lower back and left hip. He had radiation from the back into the left foot and numbness in his left leg. He rated his pain as a 8-9 out of 10; at its best, his pain was a 6. His pain was aggravated by walking, standing, stooping, lifting, lying on his back or his left side, driving, twisting, bending, and reaching above his head. His gait was steady using a straight cane. Lumbar flexion and extension were reduced by 75%. He had increased pain with lumbar extension. He was tender across the lumbar paraspinals. He had difficulty performing toe raising on the left side, but otherwise his motor strength was 5/5 in the lower limbs. Sensation was decreased in a left S1 distribution. Reflexes were 2+ at both knees and ankles. Straight leg raising was negative bilaterally. Patrick testing was positive at the left hip. He had atrophy of the left gastrocnemius. No swelling in the extremities. Peripheral pulses intact. He had full range of motion at both hips, knees and ankles. Dr. Sardo noted that a February 25, 2005 EMG revealed chronic left S1 radiculopathy and a June 2, 2004 MRI of the lumbar spine revealed L5-S1 facet arthropathy and hypertrophy. Dr. Sardo recommended that plaintiff undergo a trial of lumbar epidural steroid injections. (R. 627-29.)

A March 2008 MRI showed bulging at L4-5 that narrowed the neural foramina and effaced the thecal sac. There was an L5-S1 disc displacement and facet arthropathy narrowing the left foramen. (R. 901.)

8

Charles Derrow, M.D. On March 21, 2007, Dr. Derrow, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Derrow opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Ault could stand and/or walk at least 2 hours in an 8-hour workday. He could sit for about 6 hours in an 8 hour workday. His ability to push and/or pull was unlimited.

Dr. Derrow noted that at the January 2007 exam, Ault had decreased sensation in the left S1 distribution. Straight leg raising was negative bilaterally. Patrick test was positive at left hip. He had atrophy of the left gastroc. He had full range of motion at hips, knees and ankles. His gait was steady with a straight cane. Dr. Derrow indicated that plaintiff only exhibited trouble with ambulation when asked to tandem and heel toe walk. He could stand and/or walk no more than 2 hours in an 8 hour workday.

Plaintiff could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, or crawl. He should avoid all exposure to hazardous heights or machinery. Dr. Derrow concluded that Ault's allegations were credible, and weight was given to his treating doctor's findings. (R. 685-92).

Carolyn S. Neltner, M.D. In a June 23, 2008 letter to Dr. Hodges, Dr. Neltner, a neurological surgeon, reported that plaintiff's May 14, 2008 EMG and nerve conduction velocity study showed no evidence radiculopathy or plexopathy. There were subtle findings that potentially suggested mild peripheral neuropathy. An April 14, 2008

lumbar spine film showed mild degenerative disc disease. Dr. Neltner did not recommend surgery. Rather, she recommended an aggressive course of physical therapy and a multi-modality approach, which included ultrasound, heat, electrical stimulation, traction and massage in addition to exercise.(R. 976-77.)

 <u>W. Jerry McCloud, M.D.</u> On January 29, 2010, Dr. McCloud, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. McCloud opined that plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and or carry 25 pounds. He could stand and/or walk about 6 hours in an eight hour day. He could sit for about 6 hours in an eight hour day. He was unlimited is ability to push and/or pull. Dr. McCloud relied on plaintiff's September 11, 2009 exam showing strength was 4/5 for hip flexors and knee extensors, but normal in all other categories. His tone and bulk was normal. A January 2009 exam showed moderately severe level of muscle hyperonicity at the lumbar region and moderate stiffness. In August 2009, plaintiff's strength was normal in all categories; his gait and reflexes were also normal. He was able to heel toe and tandem walk. A June 2009 musculoskeletal exam was normal. A March 2008 MRI showed L4-5 shallow bulging disc mildly narrowing.

 Dr. McCloud concluded that although plaintiff could never climb ladders, ropes, or scaffolds, he could frequently stoop, knee, crouch and crawl. Due to a history of seizures, Ault should avoid unprotected heights, hazardous machinery and commercial driving.

10

Dr. McCloud concluded that plaintiff's allegations were only partially credible. Plaintiff stated that he could only lift 10 pounds and walk five minutes. Dr. McCloud did not assign any weight to the treating source because his statement that plaintiff is not able to work because of back pain is not supported by the objective findings. (R. 936-43.)

**Psychological Impairments.**

John P. Layh, Ph.D. Beginning in December 2003, Dr. Layh, a psychologist at Adena Health System, evaluated Ault for treatment. Plaintiff reported hopelessness and helplessness stemming from his inability to work. He described "an extremely abusive and dysfunctional family history." (R. 427.) Plaintiff exhibited a dysthymic mood, frustration, and episodes of tearfulness. Dr. Layh diagnosed depressive disorder, not otherwise specified. He recommended "a limited course of outpatient psychotherapy," with two sessions a month for six months. (*Id.*)

Stephen R. Yerian, Psy.D. On February 23, 2007, Dr. Yerian, a clinical psychologist, examined Ault at the request of the Bureau of Disability Determination. Plaintiff reported he had been depressed for the last few years. Before his back injury, he suffered an episode of depression and held a gun to his head. His father had committed suicide by shooting himself.

Plaintiff reported that he was depressed because he could not do many of the activities he used to do. He slept about 3 to 4 hours a night. His poor sleep was based in

11

part on his pain and in part on his depression. He was occasionally tearful. He ate too much and had gained weight. He lacked motivation to maintain his personal hygiene. He was irritable and lost interest in activities he formerly enjoyed. He had difficulty concentrating and had low energy.

Plaintiff had been prescribed Lexapro, but he stopped taking it because he did not feel like it was helping him. On mental status examination, Ault presented with a generally dysphoric mood with predominantly sad affect. He reported experiencing thoughts and feelings of guilt, worthlessness, and hopelessness.

Ault said he had problems performing household tasks, such as sweeping, mopping and dusting. He was able to do these tasks intermittently if he took it easy. He could cook, wash dishes and do laundry.

Dr. Yerian diagnosed major depressive disorder, recurrent, moderate; pain disorder associated with depression and lower back injury, arthritis, disc degeneration in the lower back and pinched sciatic nerve; and alcohol dependence in sustained full remission. He assigned a Global Assessment of Functioning ("GAF") score of 48. Dr. Yerian indicated that plaintiff was seriously impaired because of symptoms of depression and pain disturbances. Ault's ability to relate to others was not impaired. His ability to understand, remember and follow directions was also not impaired. Ault's ability to maintain attention and concentration did not appear to be impaired. Dr. Yerian further opined that Ault's ability to withstand the stress and pressures associated with day-to-

day work seemed markedly impaired due to his depressed mood, low energy, irritability and daily fatigue. (R. 635-641.)

On November 12, 2009, Dr. Yerian completed a second evaluation at the request of the Bureau of Disability Determination. Plaintiff reported that he had recently been diagnosed with post-traumatic stress disorder ("PTSD"). He had gone to Ohio State University Medical Center based on his belief that he was having a seizure. *See* R. 1041. He was diagnosed with PTSD. He believed the precipitating event for his PTSD was that when he was 11 years old he witnessed his father's suicide. Plaintiff complained of anxiety, shaking in his arm and head, and a tight feeling in his chest. He did not list any pscychotrophic medications. (R. 912.)

On mental status examination, Ault was generally dysphoric, with depressed mood and predominantly sad affect. Ault did not report any appetite disturbance, but he had difficulty falling and staying asleep. Most days, he felt fatigued. He experienced crying spells. He reported feeling worthless and hopeless. (R. 914.)

Dr. Yerian diagnosed Ault with dysthymic disorder; anxiety disorder, not otherwise specified; and alcohol dependence in sustained full remission. (R. 915.) He assigned a current GAF score of 50. Dr. Yerian concluded that plaintiff's ability to relate to others was moderately limited based on his irritability and ease of aggravation attributed to his anxiety and dysthymia. His abilities to understand, remember, and follow simple and complex instructions did not appear to be impaired. His ability to maintain attention and concentration did not appear to be impaired, but his abilities to maintain

13

pace and persist on tasks were moderately impaired because of fatigue, depression, low energy, irritability and anxiety. (R. 916.) Dr. Yerian concluded that Ault's ability to withstand the stress and pressures associated with day-to-day work activity was markedly impaired. (R. 917.)

Aracelis Rivera, Psy.D. On March 21, 2007, Dr. Rivera, a psychologist, completed a mental residual functional capacity assessment and psychiatric review technique. Dr. Rivera opined that plaintiff had no significant limitations with respect to understanding and memory. With respect to sustained concentration and persistence, plaintiff was moderately limited in his abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Ault had no significant limitations in social interaction. With respect to adaptation, plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. (r. 667-68.)

Dr. Rivera noted that plaintiff's allegations appeared credible and the consultative examination was entitled to partial weight. Adena Counseling records from 2003 indicated that Ault was referred by his Workers Compensation attorney regarding an allowed claim for a depressive disorder. Eight years before that, Ault sought treatment at Scioto Paint for alcohol and cannabis abuse. (R. 669.)

Dr. Rivera opined that Ault's presentation at the consultative examination and his performance of activities of daily living indicated a moderate impairment at most in his pace and persistence. Despite the consultative examiner's conclusion that plaintiff's ability to tolerate the stress and pressures of an average workweek would be markedly impaired, Dr. Rivera believed that plaintiff had at most a moderate impairment. Dr. Rivera concluded that plaintiff could complete simple and some detailed tasks in a work setting that does not impose fast pace or strict production demands. (*Id.*)

Dr. Rivera further concluded that plaintiff had mild restriction of activities of daily living and mild difficulties in maintaining social functioning. Ault had moderate difficulties in maintaining concentration, persistence and pace. He had no episodes of decompensation. (R. 681.)

Caroline Lewin, Ph.D. On December 31, 2009, Dr. Lewin, a state agency reviewing psychologist, completed a mental residual functional capacity assessment and a psychiatric review technique. Dr. Lewin opined that plaintiff had no significant limitations with respect to understanding and memory. Ault was moderately limited in his ability to carry out detailed instructions and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was moderately limited in his ability to interact appropriately with the general public. His ability to respond appropriately to changes in the work setting was also moderately limited.

15

Dr. Lewin concluded that inconsistencies regarding plaintiff's alcohol use made his allegations only partially credible. Dr. Lewin afforded less weight to Dr. Yerian's opinion that plaintiff was markedly limited in his ability to manage the stress and pressures of day-to-day work activity and to the opinion of his treating doctor that plaintiff was unable to work because of depression, anxiety and PTSD. Dr. Lewin noted that plaintiff was not taking any psychotropic medications and was not currently receiving mental health treatment. Plaintiff was able to perform chores around the house, including cooking and doing the laundry. He made lunch and breakfast every day. He did his own yard work and cared for his dog. He enjoyed playing guitar. Plaintiff appeared capable of comprehending, remembering and carrying out simple, routine tasks in a low stress environment. Because he was easily irritated, contact with the general public should be limited.  (R. 918-35.)

On May 14, 2010, David Dietz, Ph.D., a state agency reviewing psychologist, reviewed all the evidence gathered during the reconsideration and affirmed the December 31, 2009 assessment as written. (R. 964.)

**Administrative Law Judge's Findings.**

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2.      The claimant has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: lumbar degenerative disc disease, diabetes mellitus with mild peripheral

16

neuropathy, major depressive disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b ), except the claimant is precluded: from climbing ladders, ropes, or scaffolds; from more than occasional climbing of ramps or stairs; and from more than occasional kneeling, stooping, crouching or crawling. The claimant is precluded from working around hazards including unprotected heights and dangerous moving machinery. The claimant is further limited to performing only simple, routine tasks with no more than 3-4 step tasks in an environment with only occasional change and without fast-paced production or strict time quotas and with no more than occasional interaction with others.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on December 4, 1962 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.965).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a frame-work supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 21-29.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id. LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

18

- <u>The administrative law judge failed to follow the mandatory procedures for weighing opinion evidence</u>. Plaintiff argues that the administrative law judge failed to evaluate the examination and supporting opinion of the examining physician, Dr. Yerian, and resolve inconsistencies between his opinion and the opinion of the non-examining reviewer. In February 2007, Dr. Yerian determined that Ault was markedly impaired in his abilities to maintain pace, to persist, and to withstand the stress and pressure associated with day-to-day work. In November 2009, Dr. Yerian concluded that Ault was moderately impaired in abilities to function socially, to maintain attention, and to persist. Plaintiff argues that the law requires the administrative law judge to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Although the administrative law judge formulated a hypothetical based on these limitations when questioning the vocational expert, he failed to adequately discuss Dr. Yerian's findings and provide a rationale for not adopting his opinion. The administrative law judge failed to mention Dr. Yerian's 2009 examination and opinion entirely. The administrative law judge also failed to distinguish two separate opinions provided by Dr. Hodge, plaintiff's treating physician. Dr. Hodge opined that Ault was unable to work due to his symptoms of depression, post-traumatic stress disorder, anxiety and back pain. The administrative law judge was required to examine Dr. Hodge's opinion for controlling weight and provide good reason for

19

assigning it less than controlling weight. The administrative law judge failed to acknowledge these opinions and their consistency with the opinions of Dr. Yerian. The administrative law judge also erred in adopting the opinion of the non-examining psychologist with respect to plaintiff's mental residual functional capacity. Dr. Lewin's opinion consisted of a verbatim recitation of Dr. Yerian's conclusions with one key exception. Dr. Lewin noted that plaintiff could sweep, mop and dust, but Ault's ability to complete tasks at home does not indicate that he has the ability to withstand sustained activity in a work environment.

- The decision of the administrative law judge was not supported by substantial evidence because the physical portion of the residual functional capacity determination was not based on a function by function analysis. Because the administrative law judge did not include a function by function analysis of Ault's specific exertional abilities, the resulting residual functional capacity did not accurately depict his functional capabilities. The administrative law judge never discussed plaintiff's ability to sit, stand or walk. Instead, the administrative law judge simply found that a sedentary limitation was too disabling and that a medium exertional level limitation was not disabling enough. Plaintiff argues that the administrative law judge's resolution of the function by function abilities was essential to the decision. Ault has required a

20

cane for standing and walking since at least 2004. The administrative law

judge never mentioned Ault's numbness in his leg or the nerve problems

associated with his left hip or discussed how these conditions affected Ault's

ability to stand and walk in when formulating his residual functional capacity.

The administrative law judge also erred when stated that there was no object-

ive evidence of Ault's shoulder pain.


**Analysis.**  <u>Evaluating Opinion Evidence</u>. The administrative law judge stated:

The claimant attended a consultative examination with Stephen R. Yerian,
Psy.D., in February 2007. Dr. Yerian opined the claimant would be capable
of simple and routine tasks. He further noted no impairment in the claim-
ant's ability to maintain attention, relate to others, and remember simple
instructions (Exhibit 14F/8-9). Dr. Yerian's opinion is generally consistent
with the limited treatment record for the claimant. However, based on the
claimant's testimony, more significant limitations were outlined in the
residual functional capacity in this decision.
                                      . . .
A Disability Determinations Services psychologist reviewing the record in
2007, opined the claimant would be capable of simple tasks to some detail-
ed, without fast-paced work, and without strict production quotas (Exhib-
it 17F). In a subsequent review, the aforementioned limitations were in-
cluded with an additional limitation to occasional social interactions (Ex-
hibit 25F). The latter was affirmed (Exhibit 30F). The residual functional
capacity in this decision adopts all elements including simple routine
tasks, in low stress environment, with no more than occasional contact
with others. Therefore, the residual functional capacity in this decision
does not exceed the opinions of Disability Determinations Services psych-
ologists reviewing the file.

(R. 26-27.) Plaintiff argues that the administrative law judge failed to resolve inconsist-

encies between Dr. Yerian's opinions and the opinion of the non-examining reviewer.

He further points out, as defendant tacitly concedes,[1] that the administrative law judge's decision does not address Dr. Yerians' 2009 functional capacities limitations assessment.[2] Both the examining and reviewing psychologists found no significant limitations with respect to plaintiff's understanding and memory. Dr. Yerian and Dr. Lewin both concluded that plaintiff's ability to relate to others was moderately limited. Dr. Yerian opined that plaintiff's abilities to understand, remember, and follow simple and complex instructions were not impaired. Dr. Lewin concluded that Ault was moderately limited in his ability to carry out detailed instructions. Dr. Yerian found that Ault's ability to maintain attention and concentration was not impaired but his abilities to maintain pace and persist on tasks were moderately impaired. Dr. Yerian concluded that Ault's ability to withstand the stress and pressures associated with day-to-day work activity was markedly impaired; Dr. Lewin found that Ault was only moderately limited in his ability to respond appropriately to changes in the work setting and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

---

[1]Defendant's November 20, 2013 opposition to plaintiff's statement of errors, p. 7, n. 2, Doc. 15 at PageID 1144.

[2]The administrative law judge did refer to the November 2009 assessment when he indicated that plaintiff had been diagnosed with PTSD. *See* R. 26 ("He subsequently had symptoms of posttraumatic stress disorder and an additional diagnosis of anxiety disorder (Exhibit 23F/5, 24F)." Exhibit 24F is Dr. Yerian's November 2009 assessment. However, that is the only reference to Dr. Yerian's November 2009 examination of Ault.

The most significant difference between the two opinions concerns Dr. Yerian's belief that plaintiff was markedly impaired in his ability to withstand the pressures of work. The reviewing psychologist relied heavily on the opinion of Dr. Yerian except with respect the marked limitation in his ability to withstand the stress and pressures of work. The administrative law judge rejected greater limitations on the basis that Ault had very limited treatment for his mental health complaints. Although Ault was encouraged to see a counselor in September 2009, the record does not show that he followed up with this recommendation. The administrative law judge also relied on statements by plaintiff concerning his reported activities to find that his mental impairment did not preclude all work activity. *See* R. 26.

While the administrative law judge's analysis of plaintiff's psychological limitations was reasoned, it completely failed to address Dr. Yerian's 2009 opinion and does not even mention Dr. Hodges' treatment of Ault for anxiety and depression or his opinion that those conditions, together with his back pain, rendered him unable to work. For the reasons further discussed below, I conclude this case must be remanded to the Commissioner for express consideration of Dr. Yerian's 2009 opinion, Dr. Hodges' treatment notes, and his opinion about Ault's residual functional capacity.

Treating Doctor: Legal Standard.  A treating doctor's opinion[3] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

--------------------------------------------------

[3]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimus. Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 38o (6th Cir. 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[4].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[5]. *Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[6] *Gayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.,* opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

---

[5]Social Security Ruling 96-2p provides, in relevant part:

. . .

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.,* it must be adopted.

[6]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion

controlling weight. 20 C.F.R. § 404.1527(c)(2)[7]; *Gayheart,* above, 710 F.3d at 376, 2013 WL 896255, *10.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources[8]. The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment

---

[7]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. *When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion*

(Emphasis added.)

[8]Even when the treating source-opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:
Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).Moreover, the conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart*, 710 at 377. Even when the Commissioner determines not to give a treartor's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d at 242; *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>.  Plaintiff argues that he administrative law judge also failed to distinguish between two separate opinions provided by Dr. Yerian, and that he completely failed to mention the two separate residual functional capacity assessments made by Dr. Hodges, plaintiff's long-time treating physician. Dr. Hodge opined that Ault was unable to work due to his symptoms of depression, post-traumatic stress disorder, anxiety and back pain, and his opinions were consistent with the opinions of Dr. Yerian. The administrative law judge concluded that the evidence of record does not support the conclusion that these conditions are disabling. With respect

30

to his mental impairment, the administrative law judge noted that plaintiff's treatment

was limited, and plaintiff's reported activities are inconsistent with a complete inability

to perform work at all exertional levels:

> The claimant had previously reported activities including performing
> chores around the house; cooking; doing laundry; making breakfast and
> lunch daily; doing yard work including performing chores around the
> house; cooking; doing laundry; making breakfast and lunch daily; doing
> yard work including mowing with a push mower; playing guitar; feeding
> and watering the dog; and socializing with friends a couple time a week
> (Exhibit 12E). At the hearing, the claimant reportedly no longer has to
> mow. However, he testified at the hearing he is still doing laundry, chores,
> and takes care of his dog. These activities are consistent with the noted
> limitations with regard to social function, activities of daily living, and
> maintaining concentration as noted in section 4.

(R. 26.) With respect to his back impairment, the administrative law judge relied on the

fact that only non-invasive treatment had been recommended. However, while the ad-

ministrative law judge did refer to a few entries in Dr. Hodges' treatment notes[9] is his

evaluation of the evidence related to physical impairments, he failed to mention Dr.

Hodges' residual functional capacity evaluation and opinion on the issue of disability:

> The medical evidence supports a diagnosis for both physical and mental
> impairments, however, not to the degree of severity alleged. The claimant
> had electromyographic (EMG) testing in February 2005. Noted was evid-
> ence of mild S1 radiculopathy. Results suggested non-invasive treatments
> such as "traction and modalities in physical therapy" (Exhibit 5F/2). Upon
> examination by rehabilitation specialist, James J. Sardo, M.D., the claimant
> was reportedly using a cane in 2007. However, his gait was notably
> steady; motor strength was 5/5 (full) in the lower extremities; straight leg
> raising tests were negative bilaterally; reflexes were 2+ (normal) at knees

---

[9]Exhibits 23F, 28F, 35F contain office notes from Dr. Hodges. Exhibit 23F also
includes Dr. Hodges' assessment of Ault's ability to work, but the administrative law
judge's decision does not set out that opinion or discuss it.

and ankles bilaterally; but there was reduced lumbar flexion and extension (Exhibit 11F/4). Dr. Sardo recommended epidural steroid injections (Exhibit 11F/5). The claimant had the recommended epidural steroid injections with some temporary relief (Exhibit 15F/4). Magnetic resonance imaging (MRI) of the lumbar spine in March 2008, showed shallow disc bulging at L4-L5 mildly effacing the ventral thecal sac and encroaching upon the inferior portion of the neural foramina bilaterally. There was a shallow protruding disc abutting the thecal sac and mildly narrowing the inferior portion of the left foramen at L5-S1 and mild disc displacement at L3-L4 encroaching upon the left foramen (Exhibit 23F/ 19). Subsequent EMG evidence showed no evidence of radiculopathy but suggested potentially mild peripheral neuropathy. Aggressive physical therapy was recommended by neurosurgeon Carolyn S. Neltner, M.D. (Exhibit 33F/2). Notably, non-invasive therapy was suggested and no surgical lesions were identified.

The claimant reported some success with other non-invasive treatment such as the use of a TENS unit and physical therapy (Exhibit 21F/18, 23F/8). In addition to injections and physical therapy the claimant also has on occasion utilized prescription medications. In January 2010, having abstained from pain medications, the claimant reported pain in his back radiating into his left lower extremity (Exhibit 28F/7). In July 2010, the claimant reportedly was taking occasional Vicodin with some relief (Exhibit 35F/3). At the hearing, the claimant also discussed the use of Neurontin and treatment notes support some success (Exhibit 28F/ 11). While the claimant's medical evidence supports a diagnosis of lumbar degenerative disc disease there is insufficient evidence to support an impairment that would preclude work within the residual functional capacity identified in this decision. Namely, the claimant has no recommendations for more significant or invasive treatment than that listed above. Furthermore, the claimant's referral to see a surgical specialist resulted in a recommendation for nothing more than aggressive physical therapy. Notably, the claimant has achieved success with the use of noninvasive treatments including the use of a TENS unit, physical therapy, occasional use of narcotic pain medication, and chiropractic treatments (Exhibit 32F).

The medical evidence supports a diagnosis of diabetes mellitus (Exhibit 35F/3). This diagnosis is consistent with his mild neuropathy noted by EMG above. The claimant had at least one noted bout of high glucose levels in March 2010, with blurry vision (Exhibit 35F/4). Very limited

> symptoms or treatment notes exist in the claimant's medical records.
> However, the claimant's diagnosis of neuropathy is consistent with his
> diagnosis of diabetes mellitus. Therefore, this impairment is severe.
> However, the evidence does not suggest this impairment is near listing
> level severity or preclusive of work related activity within the residual
> functional capacity identified in this decision.

(R. 25-26.) As plaintiff argues in his brief, the administrative law judge's discussion

failed anywhere to mention Dr. Hodges' opinion or discuss whether that opinion was

consistent with Dr. Yerian's two consultative examination findings. Dr. Hodges was

plaintiff's long-time treator. He began treating him in July 2006 and continued to treat

him at least through March 2010. By failing to consider the opinions of Dr. Hodges, the

administrative law judge failed to follow the regulations for evaluating medical opin-

ions. The administrative law judge failed to provide any reasons for failing to adopt Dr.

Hodges' opinion, and I cannot say that this error is de minimis. Therefore, I RECOM-

MEND that this case be REMANDED to permit the administrative law judge to eval-

uate Dr. Hodges' opinion. If the administrative law judge does not accord Dr. Hodges'

opinion controlling weight, then the judge is required to provide good reasons for the

discounting the weight given to his opinion. I understand that the administrative law

judge made a reasonably detailed statement of the medical evidence and made a

reasoned analysis of the record. Nonetheless, his failure to even mention a long-time

treator's opinion assessing his patient's residual functional capacity coupled with his

failure to mention Dr. Yerian's November 2009 residual functional capacity assessment

requires remand. I express no opinion on the ultimate issue of disability.

Residual Functional Capacity Assessment. The administrative law judge con-
cluded that plaintiff retained the residual functional capacity to perform a range of light
work. The claimant is precluded from climbing ladders, ropes, or scaffolds, from more
than occasional climbing of ramps or stairs; and from more than occasional kneeling,
stooping, crouching or crawling. Plaintiff is also precluded from working around haz-
ards. He is limited to performing only simple, routine tasks with no more than a 3-4
step tasks in an environment with only occasional change and without fast-paced pro-
duction or strict time quotas. He is further limited to no more than occasional inter-
action with others. Plaintiff argues that because the administrative law judge did not
included a function by function analysis of Ault's specific exertional abilities, the result-
ing residual functional capacity did not accurately depict his functional capabilities.
Although the administrative law judge did not specifically identify limitations with
respect to plaintiff's ability to sit, stand or walk, the residual function capacity assess-
ment identified "light work as defined in 20 CFR 404.1567(b) and 416.0967(b)." Section
404.1567(b) of Title 20 of The Code of Federal Regulations provides:

> Light work involves lifting no more than 20 pounds at a time with fre-
> quent lifting or carrying of objects weighing up to 10 pounds. Even
> though the weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves sitting
> most of the time with some pushing and pulling of arm or leg controls. To
> be considered capable of performing a full or wide range of light work,
> you must have the ability to do substantially all of these activities. If some-
> one can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine dex-
> terity or inability to sit for long periods of time.

34

20 CFR § 404.1567(b). The administrative law judge concluded that plaintiff's allegations that he was unable to walk more than 30 minutes, stand longer 15 minutes or 30 minutes with a cane, and sit for only 30 minutes were not entirely credible in light of his medical treatment, the reports of treating and examining practitioners, and his reported daily activities. *See* R. 25. A February 2005 EMG showed evidence of mild S1 radiculopathy, and only non-invasive treatments were recommended. In 2007, plaintiff's gait was characterized as steady and he had full motor strength in the lower extremities. Dr. Sardo only recommended epidural steroid injections, which provided Ault with some relief. A March 2008 MRI of his lumbar spine showed shallow disc bulging at L4-L5 mildly effacing the ventral thecal sac and encroaching on the inferior portion of the neural foramina bilaterally and a shallow protruding disc abutting the thecal sac and mildly narrowing the inferior portion of the left foramen at L5-S1. There was also mild disc displacement at L3-L4 encroaching upon the left foramen. Non-invasive treatment, including the use of a TENS unit and physical therapy, provided some relief. Plaintiff occasionally took Vicodin. Neurontin provided him some relief as well. The administrative law judge found that despite a diagnosis of lumbar degenerative disc disease, the evidence of record did not support the conclusion that it precluded the performance of light work. The administrative law judge noted that no doctor recommended more significant or invasive treatment. He was referred for a surgical consultation, and the surgeon recommended physical therapy. The administrative law judge provided suffic-

ient explanation for his assessment of plaintiff's residual functional capacity, and the residual functional capacity is supported by substantial evidence in the record.

Ault maintains that he has required a cane for standing and walking since 2004 and that he administrative law judge failed to account for the numbness in his leg or the nerve problems associated with his left hip. Plaintiff further argues that the administrative law judge also erred when stated that there was no objective evidence of Ault's shoulder pain. Despite plaintiff's assertions to the contrary, however, the record does not contain any objective findings establishing a medically determinable impairment in plaintiff's left shoulder or his hip impairment. With respect to his alleged hip impairment, the administrative law judge, as previously discussed, noted that plaintiff's steady gait and full strength in his legs.

From a review of the record as a whole, I **RECOMMEND** that this case be REMANDED to allow the administrative law judge to consider the opinion of Dr. Hodges, plaintiff's treating physician.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


                                             s/Mark R.  Abel
                                        United States Magistrate Judge